In re KALLAK.

(District Court, D. North Dakota. September 13, 1906.)

BANKRUPTCY—PAYMENT OF TAXES—INTEREST.

State and municipal taxes due from a bankrupt do not constitute a claim against his estate to be proved like those of creditors, and the rule that interest will not be allowed on debts after the filing of the petition has no application thereto, but it is the duty of the court, under Bankr. Act, July 1, 1898, c. 541, § 64a, 30 Stat. 563[ U. S. Comp. St. 1901, p. 3447] to direct the payment of such taxes together with such penalties or interest as have accrued thereon under the laws of the state to the time of actual payment.

In Bankruptcy. On certificate of referee.

John E. Greene, for trustee.

George A. McGee, for Ward County.

AMIDON, District Judge. This matter comes before the court upon the certificate of John H. Lewis, Referee in Bankruptcy. The question presented arises upon the following facts: The adjudication was entered April 16, 1906. Among the debts listed by the bankrupt are state, county, and municipal taxes for the year 1905. These taxes became due December 1st of that year and became delinquent March 1, 1906, at which time a penalty of 5 per cent. was added. Thereafter, on the 1st of each month, a further sum of 1 per cent. of the original tax attached, which, by the revenue laws of the state of North Dakota, is usually spoken of as interest, but sometimes as penalty. After a certain length of time these taxes are placed in the hands of the sheriff for collection. In this case the trustee offered to pay the county treasurer the amount of the original tax with penalty and interest which had accrued previous to April 16, 1906, the date of the adjudication. This sum the county, upon the advice of the state's attorney, refused to accept, claiming that it was entitled to further interest up to the date when the payment was actually made. The matter was thereupon brought before the referee who ordered the trustee to pay the taxes in full with penalty and interest to the date of payment. The trustee feeling aggrieved by this decision, it is certified to the court for review.

The decision of the referee was correct. The contention of the trustee rests entirely upon the ground that public taxes constitute a claim against the bankrupt estate to be paid with other claims in the ordinary course of administration. As other claims are not permitted to draw interest after the adjudication, it is therefore contended that the amount of the public demand for taxes is subject to the same restriction. The fact is, however, that under the bankruptcy law (Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) and other provisions dealing with the same subject, public taxes do not constitute a "claim" in bankruptcy. It is not necessary for the public authorities to appear in a court of bankruptcy as ordinary claimants. They have no right in the administration as creditors and no voice in the selection of trustee, and the liability for taxes is in no way affected by the discharge of the bankrupt. On the other hand, the duty of affirmative action rests upon the court of bankruptcy. It is the duty of the trustee to ascertain from the public records the amount due for taxes and bring the matter to the attention of the court, and thereupon it is the duty of the court to order their payment if there are sufficient funds in the estate for that purpose. There are two reasons why ordinary claims of creditors are not permitted to draw interest subsequent to the adjudication: First, it is important that the proportionate interest of the several creditors in the estate be ascertained and fixed. If interest were to accrue, however, after the adjudication, the amount of the several claims would vary from time to time, according to their respective rates of interest and the propor-

tionate share of the several creditors would be subject to constant readjustment. The second reason is the convenience of administration. If, at the declaration of every dividend, a new basis of apportionment were required, depending upon varying rates of interest, the administration of the estate would be seriously complicated. Chemical National Bank v. Armstrong, 59 Fed. 372, 379, 8 C. C. A. 155, 28 L. R. A. 231; White v. Knox, 111 U. S. 784, 4 Sup. Ct. 686, 28 L. Ed. 603. In the case of public taxes, neither of these reasons has any application because they do not share the estate with the claims of private creditors. On the contrary, section 64a expressly provides that before anything shall be paid to the creditors by way of dividends all taxes owing by the bankrupt shall be fully discharged. The reason for claims becoming fixed at the date of the adjudication, so that interest shall not subsequently accrue having no application to public taxes, the rule itself should not be applied in such cases.

Something is said in the opinion of the referee touching the paramount sovereignty of the federal government in the matter of bankruptcy. It has, however, been the settled policy of all departments of the federal government, the legislative as well as the judicial, to avoid as far as possible, without the sacrifice of constitutional powers, any conflict between national and state authorities. It was in such a purpose that section 64a of the bankruptcy act had its origin. It is important to remember that the powers of the national government in enforcing the system of bankruptcy are purely administrative. The federal government has no proprietary interest in the estate, but is only concerned that it shall be so administered as to do justice to all parties in interest. On the other hand, the power of taxation is one of the high and indispensable attributes of sovereignty. For the national government to take over the estate of the bankrupt and apply it to the claims of private creditors without making full provision for the discharge of taxes owing to the state and its subordinate municipalities, would be to prefer private to public rights and would constitute a wholly unjustifiable interference with the state in matters pertaining peculiarly to its authority. Section 64a, providing for the payment of the taxes in full in case there are sufficient funds in the estate available for that purpose, and section 17, of Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428] which provides that the discharge of the bankrupt shall in no way affect public taxes, clearly show that it was the intent of Congress that the public revenues of the state should be in no way prejudiced by the administration of the bankruptcy act. So strongly have these considerations appealed to the courts, that the estates of bankrupts, even while in custodia legis, have been held subject to taxation by the state and its subordinate agencies. Swarts v. Hammer, 194 U. S. 441, 24 Sup. Ct. 695, 48 L. Ed. 1060. If estates may be taxed under such circumstances, no sound reason can be advanced why revenue laws fixing the penalty and interest for delinquent taxes should not be given full effect in the case of taxes legally levied and assessed prior to the adjudication.

What ought the trustee to pay under section 64a? The answer is found in its own language, "All taxes owing by the bankrupt." What-

ever would be owing by the bankrupt at the time the payment is made if no bankruptcy had intervened, that the court should require the trustee to pay. It includes the original tax and all other sums accrued thereon under the revenue laws of the state up to the time the payment is actually made or tendered. The decision of the referee is therefore affirmed.