In the Matter of WESTERN STATES WIRE CORP., Bankrupt.

William A. ROBERTSON, Petitioner-Appellant,

v.

TRUSTEE IN BANKRUPTCY, Respondent-Appellee.

No. 71–3047.

United States Court of Appeals, Ninth Circuit.

Jan. 9, 1974.

Robert E. Hannon (argued) Castro Valley, Cal., for petitioner-appellant.

Nathan Markowitz, Marvin Neben of Neben & Starrett, Inc., Anaheim, Cal., for respondent-appellee.

Before GOODWIN and WALLACE, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

On February 22, 1970, the trustee in bankruptcy for Western States Wire Corporation (the bankrupt estate) held a public auction at which Robertson placed the successful bid of $49,500 for an undocumented vessel. On the same day, Robertson paid a deposit of $12,000 to the auctioneer. The balance was to be paid before Robertson could take possession of the boat. On March 1, 1970, Orange County assessed an annual property tax against the boat in the amount of $897.39. Thereafter, on March 4, 1970, Robertson paid the balance of $37,500 and received the keys to the boat and, on March 17, 1970, he was given the certificate of ownership. When the trustee refused the tax claim of Orange County, the referee ordered the trustee to allow the claim, but also ordered Robertson to reimburse the trustee. The district court denied Robertson's petition for review. We reverse.

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

Orange County assessed the tax against the boat pursuant to California Revenue & Taxation Code § 405 which reads: "Annually, the assessor shall assess all the taxable property in his county . . . to the persons owning, claiming, possessing, or controlling it on the lien date." The lien date is set by statute as March 1. Cal.Rev. & Tax. Code § 2192.

The referee found that title to the boat was not transferred until March 17, 1970, when the certificate of ownership was delivered. However, on the basis of In re Crowell, 199 F. 659 (D.C.Mass. 1912), the referee held that Robertson, as the purchaser at the auction, became the equitable owner as of February 22, 1970, and was therefore liable for the personal property tax. The referee's reliance on *Crowell* is misplaced. In that case the referee authorized the trustee to sell certain real estate "free from any incumbrance or lien of any other party." 199 F. at 659. Subsequent to the sale, but before the trustee had delivered the deed, the town assessed taxes that became a lien upon the property. The purchaser of the property, after paying the taxes, argued that the trustee should reimburse him since he had advertised the property as being sold free of any liens. The court held that the referee could only order the property sold free of liens listed in the petition for bankruptcy and that he did not have authority to free the property of liens that attached after the petition had been filed.

█ Under California law taxes are not automatically a lien on personal property. Dohrmann Co. v. Security Savings & Loan Association, 8 Cal.App. 3d 655, 663, 87 Cal.Rptr. 792 (1970); K. Ehrman & S. Flavin, Taxing California Property § 529 at 505 & n. 3 (1967). *See* Fresno County v. Commodity Credit Corp., 112 F.2d 639 (9th Cir.), cert. denied, 311 U.S. 686, 61 S.Ct. 61, 85 L.Ed.

443 (1940). However, section 2191.4 of the California Revenue & Taxation Code provides that taxes can become a lien on personal property if the assessor files a certificate for delinquent taxes with the county recorder pursuant to section 2191.3 of the same code. There is no evidence that such a certificate was filed.[1] Therefore, the taxes were not a lien and we are not faced with the *Crowell* question of whether a person who becomes the owner subsequent to the lien date is liable for a tax which has become a lien against the property. The only question presented is who owned, claimed, possessed or controlled the boat on March 1, 1970.

█ Since the trustee concedes that the bankrupt estate controlled and possessed the boat on March 1, 1970, the only remaining issue is who was the owner on that date. The sufficiency of the acts necessary to transfer title from the bankrupt estate to the purchaser are determined by state law. 4A Collier on Bankruptcy ¶ 70.18[3] (14th ed. 1971).

█ The trustee, citing Opinion Number 47-84 of the Attorney General, 10 Ops.Att'y Gen. 177 (1947), argues that under California law title passes at an auction by the fall of the hammer when the auctioneer accepts the successful bid. *See also* Gentillalli v. County of San Diego, 240 Cal.App.2d 456, 49 Cal. Rptr. 705 (1966). In Opinion Number 47-84, however, the Attorney General was construing California Civil Code § 1741 and prior case law and specifically said that "[t]he general principles applicable to the formation of sales contracts and the passage of title thereon are also applicable to sales made at auction . . . ." 10 Ops.Att'y Gen. at 178. Section 1741 has since been repealed and replaced by provisions in the California Commercial Code, which is now the law applicable to the formation of sales contracts. Although section 2328(2) of the

---

1. Even had there been a certificate filed, it would not affect the outcome of this case because liens that attach under Section 2191.3 cannot be enforced against a purchaser for value who acquires his interest without actual knowledge of the lien. Cal.Rev. & Tax.Code § 2191.4.

Commercial Code still provides that "[a] sale by auction is complete when the auctioneer so announces by the fall of the hammer . . . ," under the new Code completion of the sale is not determinative of when title passes. The Code abolishes the concept of title for the allocation of risk between the buyer and seller, but provides that when the concept of title is material, the provisions of section 2401 control. 3 Benders U.C.C. Service, Duesenberg & King. Sales and Bulk Transfers § 8.06 (1973). Under section 2401, title in this case would pass either under subsection (2), when the seller completed his performance by physically delivering the goods, or under subsection (3), when the seller delivered the documents of title. Since the county assessed the boat before the trustee had completed either of these acts, we need not decide which subsection controls. Similarly, we need not decide if section 700 of the California Harbors & Navigation Code (now section 9900 of the California Vehicle Code) governs since under that section title would have passed when the trustee delivered the certificate of ownership, which also occurred after the county had assessed the tax.

Since under California law the bankrupt estate owned, controlled and possessed the boat on lien date, the referee erred in holding that Robertson's equitable interest made him liable for the tax. The California courts have held that the person owning the property on lien date must pay the tax even though some other person has an enforceable contract for the sale of the property. Francis H. Leggett & Co. v. County of Los Angeles, 235 Cal.App.2d 752, 45 Cal.Rptr. 561 (1965). At the fall of the auctioneer's hammer, Robertson had an enforceable contract for the purchase of the boat, but he was not yet the owner because the conditions precedent to the passing of title had not yet been completed. Thus, the bankrupt estate still owned the assessable interest and should be liable for the tax.

Reversed.